**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY AND CIGNA HEALTH AND LIFE INSURANCE COMPANY,**

**Plaintiffs,**

**VS.**

**SKY TOXICOLOGY, LTD., SKY TOXICOLOGY LAB MANAGEMENT, LLC, FRONTIER TOXICOLOGY, LTD., AND HILL COUNTRY TOXICOLOGY, LTD.,**

**Defendants.**
_____________________________________/

Case No.

JURY DEMAND

# COMPLAINT

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, "Cigna") file this Complaint ("Complaint") against Defendants Sky Toxicology, Ltd., Sky Toxicology Lab Management, LLC, Frontier Toxicology Ltd., and Hill Country Toxicology, Ltd. (collectively, "Sky Labs" or "Defendants"), and would respectfully show the Court as follows:

## I.
## NATURE OF ACTION

1. This lawsuit arises from Sky Labs' pattern of wrongful conduct, including a fraudulent scheme engineered by Sky Labs to enrich itself at the expense of Cigna and its members.

2. Cigna is a health services company that, among other things, insures and administers employee health and welfare benefit plans. In its role as a claims administrator

fiduciary of those benefit plans, it is part of Cigna's responsibilities to help maintain the affordability of healthcare coverage for its plans and their members. To do this, Cigna institutes a variety of mechanisms to sensitize its members to healthcare costs. The provisions of the Cigna administered plans that require plan members to share a higher percentage of the charges out-of-network providers bill for their services are one such mechanism. Without this obligation, some out-of-network providers could submit charges to healthcare plans which have no relation either to the provider's actual costs or to the actual market for medical services, and members would have no incentive to avoid those providers.

3. As discussed in greater detail below, Sky Labs, a group of related out-of-network diagnostic laboratories, concocted a scheme to defraud Cigna and the plans it administers and/or insures by engaging in a multi-layered scheme. Specifically, Sky Labs draws in patients from health plans that are administered and/or insured by Cigna by misrepresenting to those patients' their responsibilities under the plans, failing to bill or actually obligate the patients for their required cost-share obligations, and by further promising not to seek reimbursement from the patients for any other portion of its bill that the plan does not cover. Sky Labs did not disclose to Cigna that it is engaged in this "fee forgiveness" scheme.[1] Put simply, the charges that Sky Labs submits to Cigna are inflated and fraudulent because they misrepresent the true amount billed to patients. In reliance on Sky Labs' misrepresentations, Cigna has paid well over $20 million in claims that it was not obligated to pay under the terms of the relevant plans.

4. Underlying and exacerbating this fraudulent fee-forgiving scheme is Sky Labs' apparently lucrative and improper patient-referral kickback scheme. Cigna is informed and believes that, to steer patients to its facilities, Sky Labs has been inducing physicians and drug

---

[1] The State of Florida has declared "fee forgiveness" schemes illegal and has enacted a statute criminalizing this conduct. See Fla. Stat. Ann. § 817.234(7).

treatment centers to refer patients, including, but not limited to Cigna plan members, to their out-of-network laboratories by offering the referring providers ownership interests in the entities operating the laboratories, and then paying the referring providers kickbacks in the form of "dividends," which relate to the number of specimens referred to the laboratories. By engaging in this patient-referral kickback scheme, Sky Labs has multiplied its profits and that of the referring providers to the detriment of Cigna, Cigna's plans, and Cigna plan members.

5. For years, Sky Labs has been overbilling Cigna separately and jointly through its fraudulent fee-forgiving and patient referral-kickback schemes, and then concealing its conduct to induce Cigna to overpay Sky Labs for services provided to Cigna's members. Sky Labs' conduct has had the effect of artificially inflating the cost of healthcare to the detriment of Cigna plan members while netting Sky Labs approximately $20 million in overpayments from Cigna and the plans it serves.

6. This suit is Cigna's attempt to put an end to Sky Labs' fraudulent business practices and to recover the millions of dollars of overpayments it paid to Sky Labs.

## II.
## PARTIES

7. Plaintiff Connecticut General Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

8. Plaintiff Cigna Health and Life Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

9. Defendant Sky Toxicology, Ltd. is a limited partnership organized under the laws of the State of Florida that may be served with process through its registered agent, Jeffrey Cohen, at 909 SE 5th Ave #200, Delray Beach, FL 33483.

10. Defendant Sky Toxicology Lab Management, LLC, is a limited liability company organized under the laws of the State of Florida that may be served with process through its registered agent, Jeffrey Cohen, at 909 SE 5th Ave #200, Delray Beach, FL 33483.

11. Defendant Frontier Toxicology, Ltd. is a limited partnership organized under the laws of the State of Florida that may be served with process through its registered agent, Jeffrey Cohen, at 909 SE 5th Ave #200, Delray Beach, FL 33483.

12. Defendant Hill Country Toxicology, Ltd. is a limited partnership organized under the laws of the State of Florida that may be served with process through its registered agent, Jeffrey Cohen, at 909 SE 5th Ave #200, Delray Beach, FL 33483.

## III.
## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Sky Labs in this action, and personal jurisdiction is proper before this Court pursuant to Fla. Stat. §§ 48.193(1)(a) and (b) because Defendants operate, conduct, engage in and carry on business in Florida, and have committed tortious acts within the state of Florida. Personal jurisdiction is also proper before this Court pursuant to Fla. Stat. § 48.193(2) because Defendants engage in substantial and not isolated activities within Florida.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it

arises under the Constitution, laws or treaties of the United States. Specifically, Plaintiffs assert claims in this case that arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq. as Cigna acted as an ERISA fiduciary in administering claims submitted by Sky Labs as an out-of-network provider, and Cigna, as the claims administrator, seeks to recover overpayments that were made in connection with employee health and welfare benefits plans that fall within the scope of ERISA.

15. Venue is proper in the Southern District of Florida pursuant to 29 U.S.C. § 1132(e)(2) and § 1391(b)(1) because a substantial part of the events giving rise to the claims in this action occurred in the Southern District of Florida. Specifically, many of the patients and health plans can be found within this district, and healthcare providers that hold an interest in one or more of the Defendants and who participated in Sky Labs' patient-referral kickback scheme are located within this district.

## IV.
## FACTUAL BACKGROUND

### A. Cigna's Employee Health and Welfare Benefit Plans

16. Cigna is a global health service company dedicated to helping people improve their health and well-being by offering a broad integrated suite of health services and products to its members. One of the ways in which Cigna accomplishes this goal is by insuring and administering employee health and welfare benefit plans.

17. The products and services Cigna offers provide Cigna members with access to health coverage and benefits pursuant to a variety of healthcare benefit plans and policies of insurance, including (i) self-funded plans for which Cigna provides various third-party claims administrative services, (ii) plans insured under group policies issued by Cigna where plans are established and maintained by private employers, (iii) plans covering federal employees,

(iv) plans covering employees of state governmental entities, (v) church plans, (vi) policies issued to individuals, and (vii) Medicare.

18. The vast majority of Cigna-administered plans are Administrative Services Only ("ASO") plans funded by the employers who sponsor them, and a Cigna entity serves as the plans' claims administrator. The administrative services Cigna provides include processing claims for payments submitted by healthcare providers, and adjudicating appeals by plan members relating to adverse benefits decisions.

19. In general, Cigna's plans allow members the flexibility to choose to obtain healthcare services from either in-network or out-of-network providers. In-network providers are providers with whom Cigna has entered into an agreement pursuant to which Cigna has agreed to reimburse providers at specified rates for medical services provided to Cigna plan members. In turn, the providers agree to provide services to Cigna plan members, accept reimbursement at specified rates, and not bill Cigna plan members for any other amounts, except under limited circumstances. Generally, Cigna plans require members to pay less cost share (i.e., co-payments, deductibles, and co-insurance) when utilizing in-network providers than out-of-network providers. This allows Cigna members to obtain medical services from in-network providers with minimal financial risk or out-of-pocket expense. For convenience, Cigna provides its members with a directory of its participating providers.

20. Out-of-network providers, on the other hand, have not entered into a provider agreement with Cigna. Cigna has not agreed to pay these providers any predetermined amounts for the services provided to Cigna plan members. Out-of-network providers charge and bill Cigna and the Cigna plan members at rates the providers set independently. With few exceptions, the amounts out-of-network providers charge for their services are higher than the

contractual rates agreed to between Cigna and in-network providers, and out-of-network providers then "balance bill" Cigna plan members. As a result, a member's financial risk and out-of-pocket expense for obtaining medical services from non-participating providers is generally greater than the expense associated with comparable in-network care.

21. Cigna plan members are not foreclosed from receiving care from out-of-network providers. However, to sensitize plan members to the increased cost of care associated with out-of-network providers, Cigna plan members are required to pay a higher percentage of the charges out-of-network providers bill for their services. To that end, Cigna's plans require members to pay a higher cost share obligation, such as their deductibles and coinsurance. The plans also most often provide that charges submitted for payment to Cigna will be paid as a percentage of the maximum reimbursable charge, and that the plan members will be responsible for the difference between the amount paid by Cigna and the amount billed by the "out-of-network" provider. A provider's billed charges are an important and material component of the maximum reimbursable charge analysis and determination.

22. These cost-sharing mechanisms are not only critical to Cigna administered or insured plans, they underlie the managed care system. It is widely-known that if patients are required to pay for even a small portion of their care out of their own pockets, they will make more informed choices regarding medical care, and choose care that is medically necessary, and not simply free of charge.

**B. Cigna's Discretionary Authority**

23. Cigna is a claims fiduciary with respect to the plans at issue in this case, as it exercises discretionary authority over plan assets and plan administration. Additionally, regardless of the type of plan funding, the plan documents generally authorize Cigna to recover any overpayments made by the plans on the plans' behalves.

24. Cigna has discovered that it overpaid Sky Labs on thousands of healthcare benefit claims, which Cigna administered on behalf of hundreds of plans. The claims on which Cigna seeks recovery from Sky Labs are identified in **Exhibit A** to this Complaint.

25. From July 1, 2011 through June 9, 2015, Cigna received and processed more than 40,000 claims from one Tax Identification Number associated with the name "Sky Toxicology," over 5,900 claims from two Tax Identification Numbers associated with the name "Frontier Toxicology," and over 3,400 claims from one Tax Identification Number associated with the name "Hill Country Toxicology."

26. The overwhelming majority of these claims were submitted under ASO plans that are employer sponsored and funded, typically through employee contributions. As shown in **Exhibit B**, a representative example of a plan description for an ASO plan involved in this case, Cigna is the claims administrator for these plans and, as the authorized claims-review fiduciary of each of the plans at issue, exercises discretionary authority over claims, including whether to issue reimbursement in response to claims submitted by healthcare providers. Specifically, the typical ASO plans provide:

> **Discretionary Authority**
>
> The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

*See* **Ex. B**, at p. 54.

27. The plan sponsors of the ASO plans involved in this case have entered into Administrative Services Only Agreements with Cigna, which also delegate to Cigna the authority, responsibility, and discretion to determine eligibility for coverage, make factual determinations and coverage determinations, conduct a full and fair review of each denied claim, and decide appeals. A representative example of an ASO Agreement for an ASO plan involved in this case is attached as **Exhibit C** to this Complaint.

28. Since July of 2011, Cigna made payments in excess of $17.5 million to Sky Toxicology, $1.8 million to Hill Country Toxicology, and $3.4 million to Frontier Toxicology. *See* **Ex. A.** These payments include at least $75,000 of Cigna's own money paid on behalf of fully-insured plans.

29. Cigna also offers fully-insured plans, which are funded by Cigna, as opposed to the sponsoring employers. Cigna serves as the authorized claims-review fiduciary for the fully-insured plans and, in that role, has discretionary authority over the payment of claims. The plan terms and provisions of Cigna's fully-insured plans track the plan language appearing within **Exhibit B**.

30. In addition, the vast majority of Cigna's plans are governed by ERISA, in that they are non-governmental employee health and welfare benefit plans maintained by employers for the benefit of their employees and do not fall within any ERISA safe-harbor provision. There are hundreds of ERISA-governed plans associated with the healthcare benefit claims on which Cigna seeks recovery from Sky Labs, which are identified in **Exhibit A** to this Complaint.

31. Nonetheless, regardless of the type of plan funding, and regardless of whether the plan is governed by ERISA, Cigna exercises its discretion as a claims administrator of each of the plans associated with claims on which Cigna seeks recovery from Sky Labs. With respect to

the ERISA plans at issue, Cigna exercised its discretion as an ERISA fiduciary and has administered claims and/or appeals on behalf of such plans associated with the benefit claims on which it seeks recovery.

32. The plans also expressly authorize Cigna to collect overpayments made on the plans' behalf. *See, e.g.*, **Ex. B**, at p. 42 ("When an overpayment has been made by Cigna, Cigna will have the right at any time to: recover that overpayment from the person to whom or on whose behalf it was made; or offset the amount of that overpayment from a future claim payment.").

33. Further, Cigna's ASO Agreements with ASO plans require it to recover overpayments made on the plans' behalf. *See, e.g.*, **Ex. C**, at p. 12 ("In the event Connecticut General overpays a claim for Plan Benefits or pays Plan Benefits to the wrong party, it shall take all reasonable steps to recover the overpayment."). These provisions create a lien by agreement on the amounts wrongfully obtained by Sky Labs.

**C. Sky Labs' Scheme to Defraud Cigna**

34. In 2015, Cigna's anti-fraud unit, referred to as the Special Investigations Unit ("SIU"), conducted an audit of Sky Labs' business practices. During that audit, Cigna discovered that Sky Labs employs various schemes and practices to overbill Cigna and have Cigna overpay Sky Labs for services provided to Cigna's members. This suit is Cigna's effort to obtain reimbursement for those overpayments.

35. Sky Labs is a group of related toxicology laboratories and management companies that specialize in testing human urine samples for, among other things, narcotics, medications, and other substances. These laboratories serve primarily physicians and addiction treatment facilities.

36. Sky Labs does not have provider agreements with Cigna. Therefore, Cigna processes all claims submitted by Sky Labs on an out-of-network basis.

37. While the types of testing services Sky Labs performs are not uncommon, Sky Labs' charges are approximately 400% higher than rates approved by Medicare, and are excessively high when compared to fees submitted for urine analysis by comparable laboratories and facilities. Therefore, to induce Cigna members and physicians to choose Sky Labs over reputable, and more affordable in-network facilities, Sky Labs developed and implements an improper business model designed to defraud and take advantage of private payers (notably, virtually none of the Sky Labs' family of facilities bills federal or state reimbursement programs such as Medicare—a hallmark that the facility's practices are unlawful).

38. First, Sky Labs misleads patients (including Cigna members) by misrepresenting or failing to disclose to those patients' their cost share responsibilities under the plans and the costs of the services provided by Sky Labs.

39. In addition, Sky Labs attempts to artificially increase its average reimbursements for testing procedures by requiring physicians to order panels (tests) that bundle several panels together, as opposed to providing the option of selecting only those individual panels that are medically necessary for the patient. By requiring physicians to select groups of panels to be administered, Sky Labs increases the amount billed at the expense of Cigna for each patient tested.

40. Upon information and belief, Sky Labs also employs an improper patient-referral kickback scheme to unlawfully divert and herd patients into its facilities. Specifically, Cigna is informed and believes that Sky Labs induces physicians and drug treatment centers to refer their patients (including Cigna plan members) to its out-of-network facilities by offering ownership

interests in one or more of its drug testing laboratories and potential dividends and distributions. These "investment opportunities" are directly tied to referrals and are only available to physicians and treatment centers that perform sufficient drug testing to meet a required minimum number of specimen referrals for testing per month.

41. Upon information and belief, if a physician or treatment center investor does not meet the specimen referral quota, Sky Labs may repurchase or "redeem" the shares from the investor. On the other hand, physicians and treatment centers that meet the referral quota receive kickbacks in the form of "dividends" that are based on the profits of the laboratory, which, in turn, are based on reimbursements for the referred patients.

42. Clearly, this referral arrangement gives physicians and treatment centers an interest in the profits derived from the out-of-network facility fees charged for services performed at Sky Labs' facilities. As a result, Sky Labs' conduct induces physicians and treatment centers to refer and send their patients to Sky Labs out-of-network facilities for procedures that could otherwise have been performed in-network at a fraction of the cost. More importantly, however, because "dividends" are based on the revenue generated by referrals, Sky Labs' conduct encourages physicians and treatment centers to order tests regardless of whether such tests are medically necessary, inflating the total charges that Sky Labs submits to the patient's plan.

43. Upon information and belief, Cigna's members are entirely unaware that they were being referred to an out-of-network facility in which their physician had an ownership interest.

44. After luring Cigna members in these ways, Sky Labs subsequently waives, in whole or part, the amount of coinsurance, co-payment, deductible, and/or patient cost-sharing responsibility the plan members are required to pay under Cigna's plans.

45. As a pretext for its wrongful conduct, Sky Labs has attempted to legitimize its fee-forgiving practice by adopting a "Patient Financial Policy" which authorizes the waiver of co-insurance and deductibles for patients unable to meet their financial responsibility for out-of-network care. Upon information and belief, Sky Labs' Patient Financial Policy allows Sky Labs to determine whether it will "waive or reduce any coinsurance and/or deductible amounts" based on the financial information supplied by the patient. If in Sky Labs' view the patient is unable to pay his or her cost-sharing responsibility, the Patient Financial Policy provides that "collection is no longer undertaken with regard to the patient for the forgiven amount."

46. However, contrary to Sky Labs' policies and representations, Cigna's SIU surveyed Cigna plan members who received treatment at Sky Labs. Every member that was surveyed by Cigna's SIU indicated that he/she did not (a) receive an estimate of charges from Sky Labs before services were administered, (b) receive a bill from Sky Labs, and (c) did not remit any amount to Sky Labs. Thus, Sky Labs not only waived or failed to adhere to patients' cost-sharing responsibility irrespective of the patients' ability to pay, Sky Labs concealed the cost of its services in furtherance of its scheme to induce patients to use its services and prevent members from requesting to receive such services from an in-network provider. The fact that patients never received estimates or bills from Sky Labs demonstrates that Sky Labs concealed the true cost of its services in furtherance of its scheme to overbill Cigna.

47. In addition, Sky Labs does not disclose its true charges to Cigna. Rather, it knowingly sends Cigna bills listing false, grossly inflated charges for which it never intends to

fully obligate or hold Cigna members fully responsible, intending for Cigna to base its reimbursement on that inflated amount. These inflated bills are fraudulent and, by waiving the members' responsibility, Sky Labs severely compromised Cigna's and its customers' ability to control the cost of health care for its members.

48. Cigna reasonably relied on Sky Labs' representations and paid more for Sky Labs services than it is obligated to pay under the terms of the plans. Indeed, the terms of the plans require Cigna customers to satisfy their full, out-of-network responsibility first before the plan even has an obligation to pay. Thus, while patients who were Cigna plan members were paying Sky Labs nothing at all, or were paying as if the services were in-network, Cigna was paying Sky Labs as if they were out-of-network even though, unbeknownst to Cigna, Cigna had no obligation to pay anything in many cases. The result was that out-of-network costs skyrocketed, and Cigna paid millions of dollars to Sky Labs that it was not obligated to pay.

49. Sky Labs knew or reasonably should have known that its patients' plans required the patients to pay for a portion of the charges that Sky Labs submitted to Cigna in the form of deductibles and co-insurance.

50. Upon discovering Sky Labs' fraudulent conduct, Cigna notified Sky Labs that it had failed to bill and fully obligate Cigna customers for the appropriate amount of patient responsibility under the terms of the plans. Because Cigna could no longer rely on the accuracy and completeness of the claims submitted by Sky Labs, Cigna requested that, moving forward, Sky Labs provide Cigna with "proof of loss," which is a condition precedent to coverage. Specifically, Cigna requested documentary proof of the Cigna member's payment of his or her cost-share obligation for the medical procedure at issue so that Cigna could have some proof that

Sky Labs actually billed and obligated Cigna customers according to the terms and conditions of the underlying plans. Sky Labs refused to provide such proof.

51. As a result of Sky Labs' conduct, Cigna has overpaid Sky Labs in excess of $20 million to date. Sky Labs has not returned the payments that have been made by Cigna. Additionally, Sky Labs continues to send Cigna fraudulent bills, listing charges that it has no intention of ever fully enforcing.

52. Upon information and belief, Sky Labs contends that it has no obligation to collect cost-sharing obligations from Cigna members. As a result, an actual controversy exists regarding whether the claims submitted for reimbursement by Sky Labs are claims for covered services and whether any amounts are payable under those claims.

**D. Sky Labs' Claims are Not Payable**

53. The misrepresentations made by Sky Labs induced Cigna to pay benefits that it would not have otherwise paid. Cigna is therefore entitled to recover for the harm Cigna has incurred as a result of Sky Labs' conduct.

54. Summary plan descriptions ("SPDs") are issued to plan members, which summarize the terms and conditions under which medical expenses, including laboratory expenses, are covered and thus reimbursable under the terms of the plans. Among other things, the SPDs: (a) set forth the extent to which plan members are responsible for a portion of the costs they incur for healthcare services; (b) define the services that constitute covered expenses under the plans; and (c) contain exclusions that limit the circumstances under which claims are payable.

55. The majority of the SPDs issued in connection with the plans under which Sky Labs obtained benefits provide that "Covered Expenses" are expenses Cigna members incur for

services that are covered under the plan and are medically necessary. The standard SPD also provides that the following charges are not covered:

a. charges which the plan members are not obligated to pay or for which they are not billed or for which they would not have been billed except that the plan members were covered under a plan;

b. to the extent that payment is unlawful where the plan member resides when the expenses are incurred;

c. charges that would not have been made if the plan member had no insurance; and

d. to the extent that the charges are more than the Maximum Reimbursable Charges.

56. When a claim for reimbursement for a covered expense is submitted by a Cigna member, or by a provider or facility through an assignment of benefits, Cigna determines what part of the charge is covered by the plan. This amount is known as the “allowed amount,” and the plan requires the employer and the employee to share the cost of reimbursement for the allowed amount.

57. The provider’s billed amount is relevant and material to the determination of the allowed amount, and forms the basis for determining Cigna’s reimbursement payment. Because out-of-network, non-participating providers and facilities are not constrained by contracted rates and typically charge far higher rates for their services than comparable in-network providers and facilities, out-of-network facilities have an incentive to charge high amounts in the claims that they submit to Cigna, so that the amount Cigna pays on the claim will be correspondingly high.

58. Normally, the provider’s ability to charge high rates is constrained by the provisions of the plans that require patients to pay a greater percentage of the out-of-network provider’s charges. By not holding plan members responsible for the appropriate percentage of

its charges, Sky Labs was able to induce patients to use its facilities despite its exceptionally high fees because the patients' cost-sharing responsibility did not increase proportionately with Sky Labs' charges.

59. In addition, Sky Labs employed a patient-referral kickback scheme that violates the laws of multiple states. Because Cigna's plans cover only charges that its members are actually required to pay and for services administered in compliance with applicable laws, the plans are not required to cover the amounts billed by Sky Labs.

60. Thus, neither Cigna, nor the plans it administers were legally obligated to pay Sky Labs for the amounts they billed Cigna. Upon information and belief, the charges Sky Labs billed Cigna would not have been billed except for the fact that the plan members are covered under the relevant employee health and welfare benefit plans.

61. In addition, Sky Labs engaged in a patient-referral kickback scheme that violates state law. Therefore, Sky Labs is not eligible to receive payments on the claims that were submitted to Cigna.

62. Because the sums Cigna paid to Sky Labs were not payable, they should be returned to Cigna. In addition, certain amounts Cigna recovers on behalf of ASO plans will not be retained by Cigna, but will be returned to the employer or plan sponsor to restore the assets of ASO benefit plans it administers for the benefit of the employees covered under those plans.

## V.
## CAUSES OF ACTION

### Count I – Declaratory Relief

63. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

64. Sky Labs purports to provide urine sample testing services to patients who are covered under employee health and welfare benefit plans that are insured or administered by Cigna.

65. The claims Sky Labs submitted, and continues to submit, are claims for reimbursement for laboratory testing services provided to patients who are purportedly covered under employee health and welfare benefit plans that are insured or administered by Cigna.

66. In addition to claims previously paid, Sky Labs has submitted in excess of $13 million in additional claims (based on billed charges) for reimbursement that have been denied by Cigna.

67. As described in the preceding paragraphs, the claims Sky Labs submitted are for charges that are not covered under the relevant plans because: (a) the charges would not have been billed except that the plan members were covered under a plan; (b) Sky Labs failed to bill and fully obligate the appropriate amount of patient responsibility from the plan members based on the charges submitted to Cigna; and (c) Sky Labs' patient-referral kickback scheme violates applicable laws.

68. As a result, any claims submitted by Sky Labs are not reimbursable, and any payments Sky Labs received under such claims should be returned to Cigna. Despite that fact, Sky Labs has not returned the payments Cigna previously made to Sky Labs.

69. An actual controversy exists between Sky Labs and Cigna regarding whether claims for reimbursement are covered and payable under employee health and welfare benefit plans that are insured and/or administered by Cigna.

70. Cigna seeks a declaration that the claims for reimbursement submitted by Sky Labs are not for covered services and are not payable under employee health and welfare benefit plans that are insured and/or administered by Cigna.

71. Cigna further seeks a declaration pursuant to Section 502(a)(3) of ERISA that the claims submitted by Sky Labs are not for covered services and are not payable under the terms of employee health and welfare benefit plans governed by ERISA.

72. Cigna also seeks a declaration that Sky Labs must return all sums received from Cigna.

73. Cigna also seeks recovery of its reasonable and necessary attorneys' fees and costs.

**Count II – Fraud**

74. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

75. Sky Labs' conduct constitutes fraud.

76. The submission of claim forms to Cigna by or on behalf of Sky Labs constitute representations and certifications that the amounts billed are true and correct.

77. On or about the dates set forth in **Exhibit A,** when Sky Labs submitted claims to Cigna for reimbursement, Sky Labs knew that the material statements and representations about its charges for services were false. Specifically, Sky Labs knew and intentionally failed to disclose material information regarding the manner, extent, and nature by which Sky Labs waived Cigna members' cost-sharing responsibilities. Sky Labs intentionally failed to disclose its policy and practice of failing to bill and hold patients responsible for the appropriate amount of patient responsibility to Cigna. Up until the time Cigna conducted an investigation of Sky

Labs' billing practices, Cigna did not know that Sky Labs had a pattern and practice of waiving patient responsibility and was engaging in fee-forgiving.

78. Sky Labs also knew and intentionally failed to disclose that the claims submitted to Cigna reflected false and inflated charges.

79. Sky Labs also knew and intentionally failed to disclose that its claims for services were the direct result of a patient-referral kickback scheme that violated the laws of Florida and Texas, among other states.

80. Sky Labs submitted the claims to Cigna with the intent to induce Cigna to rely on Sky Labs' false representations and omissions alleged herein. Sky Labs' misrepresentations were material.

81. Cigna reasonably relied on such material false statements and omissions and paid the false and misleading claims submitted by Sky Labs. As a result of its conduct, Sky Labs received payments in excess of $20 million from Cigna.

82. Cigna is informed and believes, and on that basis alleges, that Sky Labs acted intentionally and in conscious disregard of the rights of Cigna, the plan sponsors, employers, and plan members, as Sky Labs knew that its acts and conduct, as alleged herein, were fraudulent and would result in severe financial injury.

83. Cigna has been damaged as a result of Sky Labs' fraudulent conduct and is entitled to an award of punitive damages in an amount to be determined at trial.

**Count III – Negligent Misrepresentation**

84. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

85. Sky Labs' conduct constitutes negligent misrepresentation.

86. In the course of its business, on or about the dates set forth in Exhibit A, Sky Labs submitted claim forms to Cigna regarding services that it provided to Cigna plan members. In those claim forms, Sky Labs failed to disclose to Cigna that Sky Labs waived in whole or in part copayments, deductibles, coinsurance, and other patient cost-sharing responsibility for the services provided to plan members. Instead, Sky Labs misrepresented the charges for its services and falsely stated charges that were higher than the actual amounts that Sky Labs required Cigna's plan members to pay for those services.

87. Sky Labs also failed to disclose that its claims for services were the direct result of a patient-referral kickback scheme that violated the laws of Florida and Texas, among other states.

88. Sky Labs submitted the claim forms to guide Cigna in processing benefits for Sky Labs' services.

89. Sky Labs knew or should have known the claims submitted to Cigna were false, or at least failed to exercise reasonable care in its non-disclosure.

90. Cigna justifiably relied on such material false statements and omissions and paid the false and misleading claims submitted by Sky Labs. As a result of its conduct, Sky Labs received payments in excess of $20 million from Cigna. Cigna has been damaged by such conduct.

**Count IV – Claim for Money Had and Received**

91. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

92. Sky Labs wrongfully billed for services in an amount greatly in excess of the reasonable billed charges for the same services in the relevant market. By routinely charging these excessive fees, Sky Labs gouged Cigna, its members, and their plans.

93. Furthermore, in reliance upon misrepresentations made by Sky Labs, Cigna paid claims for reimbursement submitted by Sky Labs that it would not have paid but for the wrongful conduct of the Defendants.

94. Sky Labs routinely waived in whole or in part the patients' financial responsibility under the plans and in turn billed Cigna as if no such waiver had occurred. Sky Labs also knew and intentionally failed to disclose that its claims for services were the direct result of a patient-referral kickback scheme that violated the laws of Florida and Texas, among other states

95. Based on the acts and omissions of Sky Labs, Cigna processed and paid benefits for services as though they were covered under the plans, when in fact they were not.

96. As a result of Defendant's conduct, Sky Labs received payments in excess of $20 million from Cigna. Sky Labs was not entitled to seek, collect, or retain the payments it received from Cigna. Sky Labs has not returned the payments to Cigna.

97. The money Sky Labs received from Cigna belongs in equity and good conscience to Cigna, the plan sponsors, and employers. Cigna seeks to recover all payments that have been made to Sky Labs.

**Count V – Claim for Unjust Enrichment**

98. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

99. Sky Labs has been unjustly enriched as a result of its fraudulent billing practices.

100. Cigna's plans are not required to cover charges that members are not billed, are not obligated to pay, or for which they would not have been billed if they did not have insurance.

101. Cigna's plans are also not required to cover amounts that exceed the Maximum Reimbursable Charge, as that term is defined in the plans.

102. Sky Labs submitted benefit claim forms to Cigna falsely stating charges for services rendered to Cigna's plan members.

103. Additionally, the amounts paid by Cigna and received by Sky Labs through their schemes described above was the direct result of numerous violations of Florida and Texas law.

104. In reliance upon statements and misrepresentations made by Sky Labs, Cigna processed benefits and paid claims for services submitted by Sky Labs. As a result, Sky Labs received payments in excess of $20 million from Cigna.

105. Under these circumstances, Sky Labs was not entitled to seek, collect, or retain the payments it received from Cigna. Sky Labs has not returned the payments to Cigna.

106. The money Sky Labs received from Cigna belongs in equity and good conscience to Cigna, the plan sponsors, and employers. Cigna seeks to recover all payments that have been made to Sky Labs.

**Count VI – Tortious Interference with Contract**

107. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

108. Sky Labs' conduct constitutes tortious interference with contract.

109. Each of the members for whom Sky Labs submitted benefits claims and received payment from Cigna received health care benefits pursuant to a benefit plan insured and/or administered by Cigna.

110. The plans pursuant to which Sky Labs submitted claims and received payment contained, among other things, provisions that required the member to pay their cost-sharing responsibility (e.g., co-payments, deductibles and co-insurance) in order for the plan to cover a portion of the submitted charges for services.

111. Sky Labs knew or reasonably should have known that its patients' plans required the patients to pay for a portion of the charges that Sky Labs submitted to Cigna in the form of co-payments, deductibles, and co-insurance.

112. Despite this knowledge, Sky Labs engaged in a fee-forgiving scheme designed to bill Cigna exorbitant charges, while waiving the portion of these charges that the patients were required to pay under the terms of their respective plans.

113. In addition, upon information and belief, Sky labs paid kickbacks to Cigna's in-network providers to encourage those providers to refer patients to Sky Labs for testing, even though Cigna's contracts with its providers require the providers to refer patients to in-network providers for non-emergency services like the ones provided by Sky Labs.

114. Thus, Sky Labs caused those in-network providers to breach the terms of their contracts with Cigna.

115. Sky Labs' tortious interference has caused damages to Cigna by causing it to make approximately $20 million in overpayments to Sky Labs. Sky Labs has caused further damages to Cigna by causing Cigna's in-network providers to violate the terms of their contracts with Cigna by referring patients to Sky Labs.

**Count VI – Claim for Deceptive Business Practices Under Florida's Deceptive Trade Practices Act**

116. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

117. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") proscribes "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." The provisions of FDUTPA are to be liberally construed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts and practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

118. An act is unfair under FDUTPA when it offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

119. Sky Labs is actively engaged in trade and commerce in the State of Florida. Fla. Stat. § 501.203(8).

120. Cigna's plans and its members are consumers as defined by the Florida Deceptive and Unfair Trade Practices Act. Id. § 501.203(7).

121. Sky Labs has violated FDUTPA by engaging in unfair, deceptive, and unconscionable acts in the conduct of its trade and commerce, as described above. These acts violated numerous important laws and regulations of the State of Florida, which are meant to protect the public safety, including but not limited to, Florida Statutes §§ 501.204 (unfair and deceptive trade practices), 817.234 (false and fraudulent insurance payments), 817.505 (Patient Brokering), 456.054 (the Anti-Kickback Statute). Fla. Stat. § 501.204.

122. Sky Labs' conduct, as described above, has also violated FDTPA by deceiving consumers into using its services through false representations about consumers' cost-sharing obligations and other responsibilities under Cigna-administered plans, thereby causing Cigna to pay millions of dollars in false charges through Sky Labs' fee-forgiving scheme.

123. Sky Labs knew or reasonably should have known that patients' plans required the patients to pay for a portion of the charges that Sky Labs submitted to Cigna in the form of co-payments, deductibles, and co-insurance. However, Sky Labs nevertheless engaged in a fee-forgiving scheme designed to bill Cigna inflated charges, while waiving the portion of these charges that the patients were required to pay under the terms of Cigna's plans.

124. Sky Labs also deceived Cigna by submitting false, grossly inflated charges to Cigna that did not reflect Sky Labs' actual charges to patients. Sky Labs' fraudulent fee-forgiving scheme has and continues to harm Cigna's business.

125. As a direct and proximate result of the Sky Labs' deceptive and unfair trade practices, Cigna was damaged in the form of payments made for services that were falsely and fraudulently billed and/or wrongfully induced. Cigna has suffered injury and damages as a result of Sky Labs' deceptive and unfair practices.

126. Sky Labs' unethical billing practices offend public policy and have harmed Cigna, Cigna's plan members, and consumers by artificially inflating the costs of healthcare services generally.

**Count VII – Claim for Overpayments Under ERISA § 502(a)(3)**

127. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

128. With respect to the ERISA-governed plans Cigna insures or administers, Cigna acts as a claims fiduciary, either as a third-party administrator of employer-sponsored and employer-funded group health benefit plans, or as an insurer of employer-sponsored group health benefit plans.

129. In addition, under the relevant plans, Cigna is an ERISA fiduciary and has the authority to review and make decisions on claims for benefits under the applicable plans. As claims administrator, Cigna is an ERISA fiduciary and has standing to sue under Section 502(a)(3) of ERISA to obtain appropriate equitable relief and enforce the terms of the ERISA governed plans.

130. The services provided by Sky Labs do not constitute covered services under the relevant health and welfare benefit plans.

131. Sky Labs was not entitled to seek, collect, or retain the payments it received from Cigna. Sky Labs has not returned the payments to Cigna.

132. The ERISA governed plans grant Cigna, as an ERISA fiduciary, the right to recover any overpayments or other payments made under the plans. Pursuant to ERISA and the express terms of the plans, Cigna is entitled to recover the overpayments made to Sky Labs. Cigna seeks to recover all overpayments that have been made to Sky Labs.

133. These overpayments were made directly by Cigna to Sky Labs.

134. Without limitation, Cigna seeks (i) a constructive trust over the payments that Cigna made to the Sky Labs, (ii) an order requiring the return of such funds, and (iii) a constructive trust over any such funds in the possession or control of the Sky Labs as a result of the fraudulent conduct specified herein.

135. Additionally, Cigna seeks a permanent injunction directing Sky Labs to submit to Cigna only charges that Sky Labs actually charges the plan member as payment in full for the services and not to submit charges which include amounts that Sky Labs does not actually require the member to pay (including, without limitation, the waiver of any portion of the members' required out-of-network co-insurance, co-payment, and deductible amounts).

## VI.
## DISCOVERY RULE

136. Cigna incorporates by reference every allegation set forth in paragraphs 1 through 64 above.

137. Cigna did not know and could not have known, despite the exercise of reasonable diligence, of all facts giving rise to its claims prior to the institution of this lawsuit.

## PRAYER FOR RELIEF

Plaintiffs Cigna respectfully request that Defendants Sky Toxicology, Ltd., Sky Toxicology Lab Management, LLC, Frontier Toxicology Ltd., and Hill Country Toxicology, Ltd., be cited to appear and answer, and that on final trial hereof, Cigna have judgment against Defendants for the following:

a. An award of both actual damages and consequential damages;

b. Statutory treble damages;

c. An award of punitive and exemplary damages;

d. Equitable relief as requested above;

e. Declaratory and injunctive relief as requested above;

f. Reasonable and necessary attorneys' fees;

g. Costs of court;

h. Prejudgment and post-judgment interest; and

i. Such other and further relief at law or in equity to which Cigna may be justly entitled.

JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.

Dated: July ___, 2015

Respectfully submitted,

/s/ Ardith Bronson
Ardith Bronson
Florida Bar No. 0423025
ardith.bronson@dlapiper.com
Michael G. Austin
Florida Bar No. 457205
michael.austin@dlapiper.com

DLA Piper LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Tel: 305.423.8562
Fax: 305.675.6366

**COUNSEL FOR PLAINTIFFS CONNECTICUT GENERAL LIFE INSURANCE COMPANY and CIGNA HEALTH AND LIFE INSURANCE COMPANY**