# Administrative Services Only Agreement

**By and Between**

[redacted]

**"Employer"**

**And**

**Connecticut General Life Insurance Company**
**"Connecticut General"**

**Effective Date: January 1, 2009**

THIS AGREEMENT AND ITS TERMS ARE PROPRIETARY AND CANNOT BE DISCLOSED WITHOUT THE PERMISSION OF EACH OF THE PARTIES

# Table of Contents


Schedule of Financial Charges .......... 3
Section 1. Term and Termination of Agreement .......... 11
Section 2. Claim Administration and Additional Services .......... 11
Section 3. Funding and Payment of Claims .......... 12
Section 4. Charges .......... 13
Section 5. Enrollment and Determination of Eligibility .......... 13
Section 6. Claim Audits and Confidentiality .......... 14
Section 7. Plan Benefit Liability .......... 15
Section 8. Modification of Plan and Administrative Duties and Charges .......... 15
Section 9. Modification of Agreement .......... 15
Section 10. Laws Governing Contract .......... 16
Section 11. Information in Connecticut General's Processing Systems .......... 16
Section 12. Resolution of Disputes .......... 16
Section 13. Third Party Beneficiaries .......... 17
Section 14. Waivers .......... 17
Section 15. Headings .......... 17
Section 16. Severability .......... 17
Section 17. Force Majeure .......... 17
Section 18. Assignment and Subcontracting .......... 17
Section 19. Notices .......... 17
Section 20. Identifying Information and Internet Usage .......... 17
Section 21. Definitions .......... 18
SIGNATURES .......... 19
Exhibit A - Plan Document .......... 20
Exhibit B – Services .......... 21
Exhibit C – Claim Audit Agreement (Sample) .......... 32
Exhibit D – Privacy Addendum .......... 35
Exhibit E – Conditional Claim/Subrogation Recovery Services .......... 41

# REDACTED PAGES 3–10

[redacted]

# Administrative Services Only Agreement

**THIS AGREEMENT**, effective January 1, 2009 (the "**Effective Date**") is by and between [redacted] ("**Employer**") and Connecticut General Life Insurance Company ("**Connecticut General**"). This Agreement replaces any and all prior agreements between the parties with respect to the subject matter hereof.

## RECITALS:

**WHEREAS**, Employer, as plan sponsor, has adopted the benefit described in Exhibit A, as may be amended, ("**Plan**") for certain of its employees/members and their eligible dependents (collectively "**Members**"); and

**WHEREAS**, Employer has requested Connecticut General to furnish certain administration services in connection with the Plan 3207840.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, it is hereby agreed as follows:

## Section 1. Term and Termination of Agreement

This Agreement is effective on the Effective Date and shall remain in effect until the earliest of the following dates:

i. The date which is at least sixty (60) days from the date that either Party provides written notice to the other party of termination of the Agreement;

ii. The effective date of any applicable law or governmental action which prohibits performance of the activities required by this Agreement;

iii. The date upon which Employer fails to fund the Bank Account as required by this Agreement or fails to pay Connecticut General any charges identified in this Agreement when due provided Connecticut General notifies Employer of its election to terminate;

iv. Any other date mutually agreed upon by the Parties.

## Section 2. Claim Administration and Additional Services

a. While this Agreement is in effect, Connecticut General shall, consistent with, the claim administration policies and procedures then applicable to its own health care insurance business (i) receive and review claims for Plan Benefits; (ii) determine the Plan Benefits, if any, payable applicable for such claims; (iii) disburse payments of Plan Benefits to claimants; and (iv) provide in the manner and within the time limits required by applicable law, notification to claimants of (a) the coverage determination or (b) any anticipated delay in making a coverage determination beyond the time required by applicable law.

b. Following (i) termination of this Agreement, except pursuant to Section 1.iii. or (ii) termination of eligibility of a Member, if the required fees have been paid in full, Connecticut General shall process Run-Out Claims for the applicable Run-Out Period (See Schedule of Financial Charges for applicable fees and Run-Out Period). At the termination of any applicable Run-Out Period, Connecticut General shall cease processing Run-Out Claims and make all relevant records in its possession relating to such claims reasonably available to Employer or Employer's designee. Connecticut General is not required to provide proprietary information to Employer or any other party.

[redacted]



c. Employer hereby delegates to Connecticut General the authority, responsibility and discretion to (i) determine eligibility and enrollment for coverage under the Plan according to the information provided by the Employer, (ii) make factual determinations and to interpret the provisions of the Plan to make coverage determinations on claims for Plan Benefits, (iii) conduct a full and fair review of each claim which has been denied as required by ERISA, (iv) decide level one mandatory appeals of "Urgent Care Claims" (as that term is defined in ERISA), and (v) conduct both mandatory levels of appeal determinations for all "Concurrent", "Pre-service" and "Post-service" claims (as those terms are defined under ERISA) and notify the Member or the Member's authorized representative of its decision. Employer will ensure that all summary plan description materials provided to Members reflect this delegation.

d. In addition to the basic claim administrative duties described above, Connecticut General shall also perform the Plan-related administrative duties agreed upon by the Parties and specified in Exhibit B.

**Section 3. Funding and Payment of Claims**

a. Employer shall establish a Bank Account, and maintain in the Bank Account an amount sufficient at all times to fund checks written on it for (i) Plan Benefits and (ii) those charges and fees identified in the Schedule of Financial Charges as payable through the Bank Account (collectively "**Bank Account Payments**") (iii) any sales or use taxes, or any similar benefit- or plan-related charge or assessment however denominated, which may be imposed by any governmental authority. Bank Account Payments may include without limitation: (i) capitated (i.e. fixed per Member) payments to Participating Providers; (ii) amounts owed to Connecticut General (e.g. overpayments) (iii) and amounts paid to Connecticut General's affiliates and/or subcontractors for, among other things, network access or in- and out-of network health care services/products provided to Members. Connecticut General may credit the Bank Account with payments due Employer under its or an affiliate's stop loss policy.

b. Connecticut General, as agent for the Employer, shall make Bank Account Payments from the Bank Account in the amount Connecticut General reasonably determines to be proper under the Plan and/or under this Agreement.

c. In the event that sufficient funds are not available in the Bank Account to pay all Bank Account Payments when due, Connecticut General shall cease to process claims for Plan Benefits including Run-Out claims.

d. Connecticut General will promptly adjust any underpayment of Plan Benefits by drawing additional funds due the claimant from the Bank Account. In the event Connecticut General overpays a claim for Plan Benefits or pays Plan Benefits to the wrong party, it shall take all reasonable steps to recover the overpayment; however, Connecticut General shall not be required to initiate court, mediation, arbitration or other administrative proceedings to recover any overpayment. Connecticut General shall not be responsible for reimbursing any unrecovered payments of Plan Benefits unless made as a result of its gross negligence or intentional wrongdoing.

e. Following termination of this Agreement, Employer shall remain liable for payment of all due Bank Account Payments and for all reimbursements due Members under the Plan. Employer shall promptly reimburse Connecticut General for any Bank Account Payments paid by Connecticut General with its own funds and no such payment by Connecticut General shall be construed as an assumption of any of Employer's liability.

This provision shall survive termination of this Agreement.

**Section 4. Charges**

a. Charges. Connecticut General shall provide to Employer a monthly statement of all charges Employer is obligated to pay under this Agreement that are not paid as Bank Account Payments. Payment of all billed charges shall be due on the first day of the month, as indicated on the monthly statement. Payments received after the last day of the month in which they are due, shall be subject to late payment charges, from the due date at a rate calculated as follows: the one (1) year Treasury constant maturities rate for the first week ending in January plus five percent (5%). For purposes of calculating late payment charges, payments received will be applied first to the oldest outstanding amount due. Connecticut General may reasonably revise the methodology for calculating late payment charges upon thirty (30) days' advance written notice to Employer.

b. Member Changes – Additions and Terminations. If an employee becomes a Member on or before the fifteenth (15th) day of the month, full charges applicable to that Member shall be due for that Member for that month. If coverage ceases on or before the fifteenth (15th) day of the month for a Member, no charges shall be due for that Member for that month. No charges are due for Members for the month when they become covered after the fifteenth of the month or for when their coverage is terminated before the fifteenth of the month.

c. Retroactive Member Changes and Terminations. Employer shall remain responsible for all charges and Bank Account Payments incurred or charged through the date Connecticut General processes Employer's notice of a retroactive change or termination of Membership. However, if the change or termination would result in a reduction in charges, Connecticut General shall credit to Employer the reduction in charges charged for the shorter of (a) the sixty (60) day period preceding the date Connecticut General processes the notice, or (b) the period from the date of the change or termination to the date Connecticut General processes the notice.

This provision shall survive termination of this Agreement.

**Section 5. Enrollment and Determination of Eligibility**

a. Eligibility Determinations and Information. Employer is responsible for administering Plan enrollment. In determining any person's right to benefits under the Plan, Connecticut General shall rely upon enrollment and eligibility information furnished by the Employer. Such information shall identify the effective date of eligibility and the termination date of eligibility and shall be provided promptly to Connecticut General in a form and with such other information as reasonably may be required by Connecticut General for the proper administration of the Plan.

b. Release of Liability. Notwithstanding any inconsistent provision of this Agreement to the contrary, if Employer, or its designee, fails to provide Connecticut General with accurate enrollment and eligibility information, benefit design requirements, or other agreed-upon information in Connecticut General's standard timeframe and format, Connecticut General shall have no liability under this Agreement for any act or omission by Connecticut General, or its employees, affiliates, subcontractors, agents or representatives, directly or indirectly caused by such failure.

c. Reconciliation of Eligibility and Information and Default Terminations. Connecticut General will periodically share potential discrepancies in eligibility information with Employer. Employer will review and reconcile any discrepancies within thirty (30) days of receipt. If Employer fails to timely do so, Connecticut General may terminate coverage for any Member not listed as eligible in Employer's submitted eligibility information.

**Section 6. Claim Audits and Confidentiality**

a. Employer may, in accordance with the following requirements and at no additional charge while this Agreement is in effect, audit Connecticut General's payment of Plan Benefits:

i. Employer shall provide Connecticut General 45 days advance written request for audit. Employer and Connecticut General will agree on an independent, third party auditor to conduct the audit (the "**Auditor**") and the date for the audit during regular business hours at Connecticut General's office(s). Employer shall be responsible for its Auditor's costs. The audit shall be conducted in accordance with the terms of Connecticut General's Claim Audit Agreement attached hereto as Exhibit C, which is hereby agreed to by Employer and which shall be signed by the Auditor prior to the start of the audit.

ii. If Employer has 5,000 or more employee Members, Employer may conduct one such audit every Plan Year (but not within 6 months of a prior audit); otherwise, Employer may conduct one such audit every two Plan Years (but not within 18 months of a prior audit).

iii. Auditor will review payment documents relating to a random, statistically valid sample of 225 claims paid during the two prior Plan years and not previously audited (the "**Audit**") subject to any contrary terms in participating Provider agreements. The scope of the Audit may include types of claims prone to overpayment recovery opportunities provided types of claims prone to underpayments are equally included. Audit findings and recommendations shall be based upon the actual claims reviewed and not upon statistical projections or extrapolations.

b. Subject to the requirements of applicable law, the terms of this Agreement and the Privacy Addendum in Exhibit D, a signed Business Associate agreement between Employer and designee, and a signed Confidentiality Agreement by applicable designee, Connecticut General shall release copies of confidential claims and Plan Benefit payment information in Connecticut General's claims system ("**Confidential Information**") and may release copies of proprietary information relating to the Plan in Connecticut General's claims system ("**Proprietary Information**") to the Employer and/or its designees. Employer agrees that Employer and its designees will keep Confidential Information and Proprietary Information confidential and will use Confidential Information and Proprietary Information solely for the purpose of administering the Plan or as otherwise required by law. Employer is solely responsible for the consequences of any use, misuse, or disclosure of Confidential Information provided by Connecticut General pursuant to this paragraph b.

c. Connecticut General will maintain the confidentiality of all Protected Health Information in its possession in accordance with the Privacy Addendum in Exhibit D.

d. Upon termination of this Agreement, Connecticut General shall make information available to the extent administratively feasible if the Parties agree upon the charge to be paid by Employer.

The obligations set forth in this section shall survive termination of the Agreement.

**Section 7. Plan Benefit Liability**

a. Employer Liability for Plan Benefits. Employer is responsible for all Plan Benefits including any Plan Benefits paid as a result of any legal action. Employer shall indemnify and hold harmless Connecticut General, its directors, officers and employees for any reasonable expense incurred (including reasonable attorneys fees) by them in the defense of any action or proceeding involving a claim for Plan Benefits. Connecticut General shall reasonably cooperate with Employer in its defense of such actions.

If Connecticut General pays a claim for Extra-Contractual Benefits, Employer is responsible for funding the payment and such payments shall not be considered in determining reimbursements or payments under stop loss insurance or in determining any risk-sharing or performance guarantee reimbursements. Employer shall indemnify Connecticut General and hold it harmless from and against all claims, liabilities, and/or expenses (including attorney's fees and court costs) which Connecticut General may incur in connection with making such payments.

b. Employer Liability for Plan Related Expenses. Employer shall reimburse Connecticut General for any amounts Connecticut General may be required to pay (i) as state premium tax or any similar Plan-related tax, charge, surcharge or assessment, or (ii) under any unclaimed or abandoned property, or escheat law, with respect to Plan Benefits and any penalties and/or interest thereon.

These indemnification/reimbursement obligations shall survive termination of this Agreement.

**Section 8. Modification of Plan and Administrative Duties and Charges**

a. Connecticut General shall have the right to revise the charges identified in this Agreement (i) on each anniversary of this Agreement, (ii) at any time by giving Employer at least sixty (60) days' prior written notice, but not more frequently than once in a six (6) month period, (iii) upon any modification or amendment of the benefits under the Plan or Connecticut General's administrative duties, (iv) upon any variation of fifteen percent (15%) or more in the number of Members used by Connecticut General to calculate its charges under the Agreement, and/or (v) upon any change in law or regulation that materially impacts Connecticut General's liabilities and/or responsibilities under this Agreement.

b. Employer shall provide Connecticut General written notice of any modification or amendment to the Plan sufficiently in advance of any such change as to allow Connecticut General to implement the modification or amendment. Employer and Connecticut General shall agree upon the manner and timing of the implementation subject to Connecticut General's system and operational capabilities.

c. Modification of Connecticut Generals' duties shall be by mutual agreement. The parties shall reflect such modification and any revised charges (if applicable) in a letter agreement which shall become part of this Agreement.

**Section 9. Modification of Agreement**

This Agreement constitutes the entire contract between the parties regarding the subject matter herein. Except as otherwise provided herein, the provisions of this Agreement shall control in the event of a conflict with the terms of any other agreements. No modification or amendment hereto shall be valid unless in writing and signed by an authorized person of each of the parties, except that modification of fees pursuant to Section 8 above may be made by written notice to Employer

by Connecticut General. If Employer pays such revised fees or fails to object to such revision in writing within fifteen (15) days of receipt, the Agreement shall be deemed modified to reflect the fees as communicated by Connecticut General.

**Section 10. Laws Governing Contract**

This Agreement shall be construed in accordance with the laws of the State of Connecticut without regard to conflict of law rules, and both parties consent to the venue and jurisdiction of its courts.

**Section 11. Information in Connecticut General's Processing Systems**

Connecticut General may retain and use all Plan related claim and Plan Benefit payment information recorded for or otherwise integrated into Connecticut General's business records including claim processing systems during the ordinary course of business (provided, however, that claim or payment information will be available to Employer pursuant to Section 6). Connecticut General will retain claim and payment information as required by applicable law.

**Section 12. Resolution of Disputes**

Any dispute between the Parties arising from or relating to the performance or interpretation of this Agreement ("**Controversy**") shall be resolved exclusively pursuant to the following mandatory dispute resolution procedures:

a. Any Controversy shall first be referred to an executive level employee of each party who shall meet and confer with his/her counterpart to attempt to resolve the dispute ("**Executive Review**") as follows: The disputing Party shall give the other Party written notice of the Controversy and request Executive Review. Within twenty (20) days of such written request, the receiving Party shall respond to the other in writing. The notice and the response shall each include a summary of and support for the Party's position. Within thirty (30) days of the request for Executive Review, an employee of each Party, with full authority to resolve the dispute, shall meet and attempt to resolve the dispute.

b. If the Controversy has not been resolved within thirty-five (35) calendar days of the request of Executive Review under Section 12.a, above, the Parties agree to mediate the Controversy in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Mediation ("**Mediation**"). The mediation shall be conducted in Heathrow, Florida. Each party shall assume its own costs and attorneys fees. The mediator's compensation and expenses and any administrative fees or costs associated with the mediation proceeding shall be borne equally by the parties.

c. If the Controversy has not been resolved by Executive Review or Mediation, the Controversy shall be settled exclusively by binding arbitration. The arbitration shall be conducted in the same location as noted in Section 12.b. above, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration. The arbitration shall be binding on the Parties to the Agreement and on any respective affiliates which joined in the arbitration. The arbitrator's decision shall be final, conclusive and binding, and no action at law or in equity may be instituted by either Party other than to enforce the arbitrator's award. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each Party shall assume its own costs and attorneys fees. The arbitrator's compensation and expenses and any administrative fees or costs associated with the arbitration proceeding shall be borne equally by the Parties.

**Section 13. Third Party Beneficiaries**

This Agreement is solely for the benefit of Employer and Connecticut General. It shall not be construed to create any legal relationship between Connecticut General and any other party.

**Section 14. Waivers**

No course of dealing or failure of either Party to strictly enforce any term, right or condition of this Agreement shall be construed as a waiver of such term, right or condition. Waiver by either Party of any default shall not be deemed a waiver of any other default.

**Section 15. Headings**

Article, section, or paragraph headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**Section 16. Severability**

If any provision or any part of a provision of this Agreement is held invalid or unenforceable, such invalidity or unenforceability shall not invalidate or render unenforceable any other portion of this Agreement.

**Section 17. Force Majeure**

Connecticut General shall not be liable for any failure to meet any of the obligations required under this Agreement where such failure to perform is due to any contingency beyond the reasonable control of Connecticut General, its employees, officers, or directors. Such contingencies include, but are not limited to, acts or omissions of any person or entity not employed or reasonably controlled by Connecticut General, its employees, officers, or directors, acts of God, fires, wars, accidents, labor disputes or shortages, and governmental laws, ordinances, rules or regulations.

**Section 18. Assignment and Subcontracting**

Neither Party may assign any right, interest, or obligation hereunder without the express written consent of the other Party; provided, however that Connecticut General may assign any right, interest, or responsibility under this Agreement to its affiliates and/or subcontract specific obligations under the Agreement provided that Connecticut General shall not be relieved of its obligations under the Agreement when doing so.

**Section 19. Notices**

Except as otherwise provided, all notices or other communications hereunder shall be deemed to have been duly given when made in writing and either (a) delivered in person, (b) delivered to an agent, such as an overnight or similar delivery service, or (c) deposited in the United States mail, postage prepaid, and addressed as follows:

To Connecticut General:
Connecticut General Life Insurance Company
1111 Market Street
Chattanooga, TN 37402
Attention: Jenny Wilson, Regional Director

To Employer:
[redacted]

The address to which notices or communications may be given by either party may be changed by written notice given by one party to the other pursuant to this Section.

**Section 20. Identifying Information and Internet Usage**

Except as necessary in the performance of their duties under this Agreement, neither party may use the other's name, logo, service marks, trademarks or other identifying information or to establish a link to the other's World Wide Web site without its prior written approval.

## Section 21. Definitions

**Agreement** – this entire document including the Schedule of Financial Charges and all Exhibits.

**Bank Account** – a benefit plan account with a bank designated by Connecticut General. Established and maintained by Employer in its or a nominee's name.

**ERISA** – the Employee Retirement Income Security Act of 1974, as amended and related regulations.

**Extra-Contractual Benefits** – Payments which Employer has instructed Connecticut General to make for health care services and/or products that Connecticut General has determined are not covered under the Plan.

**Member** – a person eligible for and enrolled in the Plan as an employee or dependent.

**Participant/Participating Members** – Member(s) who is (are) participating in a specific program and/or product available to Members under the Plan.

**Participating Providers** – providers of health care services and/or products who/which contract directly or indirectly with Connecticut General to provide services and/or products to Members.

**Plan Benefits** – Amounts payable for covered health care services and products under the terms of the Plan.

**Party/Parties** – refers to Employer and Connecticut General, each a "Party" and collectively, the "Parties."

**Plan Year** – the 12 month period beginning on the Effective Date and, thereafter, each subsequent 12 month period.

**Run-Out Claims** – claims for Plan Benefits relating to health care services and products that are incurred prior to termination of this Agreement or termination of a Plan benefit option, as applicable.

# SIGNATURES

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed in duplicate and signed by their respective officers duly authorized to do so as of the dates given below.

Dated at __________, __________

[redacted]

This _____ day of _________, ______

By___________________________
Name:
Its
Duly Authorized

Dated at Hartford, Connecticut

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY**

This 4th day of March, 2009

By ____________________________
Name: Dietrich J. Krauland
Its Contractual Agreement Unit Manager
Duly Authorized

# REDACTED PAGES 20–42